**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
EDISON MAITLAND and YVONNE
MAITLAND,

                         *Pro se* Plaintiffs,

                -against-

LISA FISHBEIN, ROBERT FISHBEIN, and
J P MORGAN & CHASE BANK,

                     Defendants.
------------------------------------------------------------X

                             **REPORT AND**
                        **RECOMMENDATION**

                 CV 15-5845 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

     This case was commenced by Plaintiffs Edison and Yvonne Maitland ("Plaintiffs" or "the

Maitlands") to seek redress for an alleged mortgage fraud scheme perpetrated by Defendants

Lisa and Robert Fishbein ("the Fishbeins") and JP Morgan Chase Bank ("Chase")[1] (collectively,

"Defendants").[2]  At the outset, the Court points out that this case is in a different procedural

posture, having recently been remanded to the district court by the Second Circuit for reasons

which are explained further on in this Report and Recommendation.  *See Maitland v. Fishbein*,

712 Fed. App'x 90, 92-93 (2d Cir. 2018) (summary order).

     On July 11, 2016, the Defendants filed separate motions seeking to dismiss the Amended

Complaint ("Am. Compl.") [DE 30].  *See* DE 44, 45.  Both motions to dismiss were referred to

---

    [1]    JPMorgan Chase Bank is improperly named "J P Morgan & Chase Bank" in the
caption.

    [2]    Select Portfolio Servicing Inc. was previously a defendant in this action, however,
Plaintiffs voluntarily dismissed all claims against this entity on January 7, 2016.  *See* DE 25.

this Court for a Report and Recommendation as to whether they should be granted.  *See* Electronic Order dated October 17, 2016.  This Court issued a Report and Recommendation on February 28, 2017, recommending to District Judge Azrack that the Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be granted.  *See* February 28, 2017 Report and Recommendation ("February 28, 2017 R&R") [DE 48].  Specifically, this Court recommended dismissal of the action based on Plaintiffs' failure to plead either a federal cause of action or facts sufficient to implicate the Court's diversity jurisdiction.  The Court did not address the viability of Plaintiffs' state law claims.  *See id*. at 38.

Judge Azrack adopted this Court's Report and Recommendation over Plaintiffs' objections on March 16, 2017.  *See* DE 53.  Plaintiffs subsequently appealed Judge Azrack's decision, and, on February 26, 2018, the United States Court of Appeals for the Second Circuit issued a Summary Order "deem[ing] the Maitlands' pleadings amended to properly allege diversity jurisdiction,"[3] and "remand[ing] the case for the district court to address the Maitlands' state law claims in the first instance." *Maitland*, 712 Fed. App'x at  92.  The Second Circuit's Mandate was issued on March 19, 2018.  *See* DE 60.  On remand, both motions to dismiss were once again referred by Judge Azrack to this Court for a Report and Recommendation addressing Plaintiffs' state law claims pursuant to the Second Circuit's Order.  *See* Electronic Order dated June 12, 2018.   These motions are again the subject of this Report and Recommendation.

Having considered the parties' briefs, including supplemental briefing requested by the Court, as well as the applicable case law, this Court respectfully recommends to Judge Azrack, for the reasons set forth below, that the Defendants' motions to dismiss the Amended Complaint

---

[3]   The Second Circuit's decision was based on supplemental information provided by the Plaintiffs on appeal.

be GRANTED, and that this action be DISMISSED.  The Court further recommends that Plaintiffs' motion for sanctions [DE 72] be DENIED.

## II.    BACKGROUND

### A.    Facts Alleged in the Amended Complaint

Under the heading "Jurisdiction" in Plaintiffs' Amended Complaint, Plaintiffs assert violations of the Truth in Lending Act, the Home Ownership and Equity Protection Act, the Real Estate Settlement Practices Act, the Consumer Protection Act, the Patriot Act, and RICO, as well as claims for constructive fraud, breach of constructive trust, mortgage fraud and conspiracy to commit mortgage fraud.  Am. Compl. ¶ 12.  Plaintiffs base their claims on the following allegations which are taken as true for purposes of the instant analysis.

In November 2006, Plaintiffs sought to refinance their property located at 224 Park Avenue, Roosevelt, New York 11575.  Am. Compl. ¶ 27.  Plaintiffs aver that they had "$150,000 in equity" in their home at that time.  *Id*.  At some point, Plaintiffs came into contact with Robert Fishbein, who, Plaintiffs maintain, is a registered mortgage broker with Freedom Mortgage Corp. *Id*. ¶ 29.  According to Plaintiffs, "Freedom Mortgage Corp." was responsible for "providing/writing and broker Mortgage Loan Notes for Washington Mutual Mortgage Corp." *Id*.  Plaintiffs further allege that these notes are "back[ed] by the US Government."  *Id*.  The Amended Complaint goes on to state that Mr. Fishbein informed Plaintiffs that he "can do plaintiff cash-out refinancing by offering plaintiff a reduction in his broker fee and that he can get the full amount of money that plaintiff need ($140,000) because he Defendant Broker Robert Fishbein have is own appraisal that do a good job and that he Defendant Broker Fishbein have the expertise to get the job done in a reasonable time frame."  *Id*. ¶ 28.

Based on Mr. Fishbein's representations, Plaintiffs agreed to retain him.  Am. Compl. ¶ 30.  Plaintiffs aver that Mr. Fishbein directed them to sign "blank mortgage refinance loan document[s]" without the presence of a notary.  *Id*.  They were also informed that they did not need an attorney to be present.  *Id*. ¶ 32.  However, Plaintiffs allege that Mr. Fishbein's attorney, Alfred Walendowski, participated in the refinancing and requested that Plaintiffs "leave the dates blank" on the documents.  *Id*. ¶ 31. All of this allegedly took place in November 2006.  *Id*.

During the course of the refinancing, Plaintiffs inquired into the amount of their new monthly mortgage payment and their interest rate under the mortgage agreement.  Am. Compl. ¶ 33.  According to Plaintiffs, they explained to Mr. Fishbein that if the monthly mortgage payment and interest rate were high, they would then be unable to "accept" the loan agreement based on their limited income.  *Id*. ¶ 34.  Mr. Fishbein stated to them that "upon completion of the loan process, if the rate is high plaintiff would have to wait 6-12 months then refinance again to get a better rate."  *Id*.  Plaintiffs assert that around this time, Mr. Fishbein also told them that the loan was "already in progress and there is nothing he Defendant Robert Fishbein can do because he . . . already submitted plaintiffs mortgage documentation loan."  *Id*. ¶ 35.  Mr. Fishbein also allegedly failed to disclose the "penalty for late payments and the balloon size of the balloon payment."  *Id*. ¶ 36.  Plaintiffs state that they "did not have a sit down closing."  *Id*. Nor were they given any copies of the loan documents at the time of the refinancing.  *Id*. ¶ 39.  It was not until a month after the refinancing that they received copies of certain "loan documents" related to the refinancing via U.S. mail.  *Id*.

According to the Amended Complaint, Plaintiffs "later found out that [they] had unknowingly signed three Loans Notes, two of the notes was refinance by Washington Mutual Mortgage Corp and another note made in the name of Lisa Fishbein the wife of the Mortgage

Broker Robert Fishbein." Am. Compl. ¶ 40. The first mortgage loan, #755855517, was in the amount of $340,000, with an adjustable rate of 8.06%, and a monthly payment of $2,325.56 for one year. *Id*. ¶ 41. After one year, the interest rate was to increase to 10%, followed by a 6.85% increase every six months thereafter. *Id*. The loan would then have a balloon payment at the end of its term. *Id*. The second loan, #75585525, was in the amount of $63,750 with an interest rate of 12.875%, and a monthly payment of $698.98. *Id*. ¶ 42. The amount of the third loan was $43,500, with an interest rate of 10.5% and a monthly payment of $385.43. *Id*. ¶ 43.

Unbeknown to Plaintiffs, Mr. Fishbein placed his wife's name on the documents as a mortgage lender and Plaintiffs were "being trapped in a Predatory Lending Scheme." Am. Compl. ¶ 43. Plaintiffs assert that they were placed into an "Option ARMs loan which fail to adequately and accurately disclose the essential terms of plaintiff loans, mainly that plaintiffs would suffer negative amortization if Plaintiff make their monthly payments according to the only payment that was mail to plaintiff without any sit down closing of the loan." *Id*. ¶ 44. The Amended Complaint states that when these events transpired in 2006, "plaintiff was mentally incapacitated and was suffering a host of mental disorder and just release from a psychiatric hospital." *Id*. ¶ 46. Plaintiffs were only able to make three to four payments before they were unable to make further payments. *Id*. ¶ 47. On June 12, 2007, the Fishbeins, with the assistance of their attorney, Mr. Walendowski, placed a lien on Plaintiffs' property located in Florida, even though, according to Plaintiffs, (1) Mr. Walendowski is not licensed to practice law in Florida, and (2) Plaintiffs' Florida property was not the subject of the loan refinancing. *Id*. ¶ 52. Moreover, Plaintiffs state that "Defendant Broker Robert Fishbein and Defendant Lisa Fishbein have no Mortgage License in the State of New York and State of Florida to . . . write

and issue Residential Mortgage Note[s]." *Id.* ¶ 48. Plaintiffs state that neither the Fishbeins nor their attorney notified Plaintiffs of the lien. *Id.* ¶ 53.

On February 22, 2008, Plaintiffs state they received a letter from the Law Firm of Steven J. Baum informing them that he was counsel of record for Washington Mutual Bank. Am. Compl. ¶ 58. According to Plaintiffs, the letter notified them that they had a "principal amount of $339,700.78" in connection with Mortgage Loan #755855517. *Id.* Adding miscellaneous charges brought the outstanding balance to $364,713.46. *Id.* The letter further informed Plaintiffs that Washington Mutual Bank would be bringing an immediate mortgage foreclosure proceeding. *Id.* Thereafter, on February 25, 2008, Washington Mutual Bank, under the name Lasalle Bank, N.A., filed a foreclosure action in New York State Supreme Court for the property in Roosevelt, New York. *Id.* ¶ 61. According to Plaintiffs, Lasalle is a "combination of JP Morgan & Chase and Washington Mutual Bank." *Id.* Plaintiffs claim that on March 11, 2008, they filed a response and a counterclaim against Washington Mutual Bank. *Id.* ¶ 62. Plaintiffs requested that the foreclosure action be dismissed and that Washington Mutual work with Plaintiffs "for an affordable mortgage." *Id.*

In or around January and April 2009, Plaintiffs received two "consultation letters." Am. Compl. ¶ 57. One of the letters informed Plaintiffs that they "have a $483,189.00 mortgage loan for Lisa Fishbein and that plaintiff is eligible for modification." *Id.* The other letter made reference to Plaintiffs' failure to respond to previous attempts to notify them "of Defendant Lisa Fishbein mortgage loan." *Id.* Plaintiffs allege that they received an undated third letter, this time from Robert Fishbein, offering Plaintiffs assistance in negotiating "a loan modification and debt settlement." *Id.* Plaintiffs "had no idea that this was a scheme that was played out on plaintiffs

as predatory lending and that the numbers of letters plaintiff received was from independent

mortgage consultant and brokers seeking to refinance plaintiffs loan." *Id*.

On October 6, 2009, Plaintiffs received a letter informing them that Washington Mutual

Bank was transitioning to Chase and that beginning October 25, 2009, Chase would commence

servicing Plaintiffs' loan. *Id*. ¶ 63. Plaintiffs do not specify in their Amended Complaint the

loan(s) to which this arrangement applied. Based on the Court's reading of the Amended

Complaint, however, it appears Chase began servicing loan #755855517.

In the foreclosure action, Plaintiffs allege that the New York State Supreme Court

scheduled a conference for February 8, 2010, Am. Compl. ¶ 64, and subsequently a settlement

conference for April 9, 2010. *Id*. ¶ 65. Plaintiffs claim, however, that on February 11, 2010, "JP

Morgan & Chase and The Law Firm of Steven J. Baum trick and bribe plaintiff in signing an

Mortgage Agreement before the State Supreme Court Foreclosure Settlement Conference dated

April 9, 2010." *Id*. ¶ 66. This agreement, dated February 11, 2010, was used, according to

Plaintiffs, to purposefully circumvent the court ordered settlement conference. *Id*. ¶¶ 68-69.

Once the agreement was executed, Lasalle immediately dismissed the foreclosure action. *Id*.

¶ 68. The Amended Complaint asserts that the February 11, 2010 "agreement" was a

modification which added $99,714.77 to Plaintiffs' principal balance of $339,612.68. *Id*. ¶ 69.

Plaintiffs aver that this "modification addition was a deception and misrepresentation," and that

the $99,714.77 was a "kickback" to Chase based on the inflated foreclosure balance. *Id*. ¶ 72.

The modification agreement, Plaintiffs state, is "an option adjustable mortgage loan Negam loans

(aka 'option ARM' Loan) with a 'teaser rate' for a limited number of years," negative

amortization, and a balloon payment at the end of the loan's term. *Id*. ¶¶ 77, 81. Under such

terms, Plaintiffs assert they would be unable to stay up to date on their payments. *Id*. ¶ 78. Plaintiffs maintain that at this time, the loan to value ratio was $439,327.45 to $247,600. *Id*. ¶79.

Around April 30, 2012, Plaintiffs filed a complaint with the "Federal Independent Foreclosure Review," which, Plaintiffs contend, is affiliated with "The Board of Governors of the Federal Reserve." Am. Compl. ¶¶ 82-84. The Review informed them on April 12, 2013 that they had been "financially injured as a result of deficient mortgage servicing by the Bank & its Broker" and that they had the right to file a civil action. *Id*. ¶ 84. According to Plaintiffs, it was not until they received this notification that they became aware they had fallen victim to a fraudulent mortgage scheme involving "conspiracy to defraud, mortgage fraud, bank fraud, wire fraud, mail fraud and that plaintiff was a victims of a Rico Racketeering Fraud Scheme by Mortgage Broker Fishbein." *Id*. ¶ 85.

On May 22, 2013, Plaintiffs discovered that the Fishbeins had filed a lien on Plaintiffs' Florida property without their knowledge. Am. Compl. ¶ 89. The Amended Complaint further alleges that on that same day, Plaintiffs filed a "Notice of Contest of Lien with the 7th Judicial Circuit Court in the County of Florida." *Id*. ¶ 91. According to Plaintiffs, in or around November 2013, Chase failed to comply with a court-ordered settlement agreement that Plaintiffs refer to as "The Big Banks Foreclosure Settlement Agreement." *Id*. ¶ 94. Plaintiffs maintain that Chase failed to provide them with mortgage relief remedies mandated by the agreement and the Amended Complaint lists a number of purported claims against Chase. *See id.* Plaintiffs state that in June 2014, Chase transferred Plaintiff's loan to Select Portfolio Servicing, Inc. ("SPS") and removed one of the liens from Plaintiffs' property. *Id*. ¶ 97. On August 29, 2015, Chase released a lien (Loan #755855525) on Plaintiffs' property located in

Roosevelt, New York and informed Plaintiffs that they had the right to occupy the property until they sold the home or title was transferred.  *Id*. ¶ 122.

Based on the foregoing allegations, Plaintiffs request that the Court "void the three Residential Mortgage Notes or [ ] invalidate all three transaction due to Conflict of Interest, Fraudulent Mortgage Scheme, Misrepresentation, Omissions, Constructive Fraud, Breach of Fiduciary Duty, Breach of Contract, Lack of Capacity, Duress, Non-disclosure, Unjust Enrichment, Intentional infliction of emotional distress and unconscionability Slander of Title and a violation double-dipping."  Am. Compl. ¶ 115.  Although the allegations discussed above were not separated into counts, Plaintiffs begin the next portion of the Amended Complaint with the following heading: "SEVEN COUNT CONSTRUCTIVE TRUST/WITH UNJUST ENRICHMENT."  *Id*. ¶¶ 122-23.  Here, Plaintiffs repeat many of the same allegations set forth in the first part of their Amended Complaint.  They reiterate that they were unaware of the "defective loan origination" by the Fishbeins and the subsequent "defect[ive]" remodification of the loan by Chase.  *Id*. ¶ 124.  Moreover, Plaintiffs argue that (1) the Fishbeins were enriched by their receipt of "fraudulent mortgage origination fees," and (2) Chase was enriched by receiving monthly loan payments, and by making a profit of over $200,000 on its sale of the alleged defective and fraudulent loan to SPS.  *Id*. ¶ 131.

### B.    Relevant Procedural History

Plaintiffs filed the initial complaint in this action on October 9, 2015.  *See* DE 1. Defendant SPS was voluntarily dismissed from the action on January 7, 2016.  *See* DE 25.  On February 26, 2016, Plaintiffs filed their Amended Complain, on consent.  *See* DE 30.  In March 2016, the Fishbeins and Chase each filed letter requests to Judge Azrack for a pre-motion conference for purposes of moving to dismiss the Amended Complaint.  *See* DE 33, 34.  Judge

Azrack waived her pre-motion conference requirement on April 6, 2016, and on July 11, 2016, the Fishbeins and Chase each filed their motions to dismiss. *See* DE 44, 45. Both motions were referred to this Court for a Report and Recommendation on October 17, 2016. On February 28, 2017, this Court issued its Report and Recommendation recommending that the action be dismissed based on Plaintiffs' failure to plead either a federal cause of action or facts sufficient to implicate the Court's diversity jurisdiction. *See* DE 48. On March 16, 2017, Judge Azrack adopted this Court's Report and Recommendation over Plaintiffs' objections, *see* DE 53, and the case was closed on March 20, 2017. *See* DE 54.

On April 17, 2017, Plaintiffs filed a notice of appeal to the Second Circuit. *See* DE 56. The Court of Appeals issued its Summary Order on February 26, 2018, (1) affirming Judge Azrack's judgment dismissing Plaintiffs' federal claims, and (2) remanding the case for the district court to address whether Plaintiffs' Amended Complaint states any state law claims in light of Plaintiffs' having sufficiently alleged diversity of citizenship on appeal. *See* DE 59. On June 12, 2018, Judge Azrack again referred Defendants' motions to dismiss to this Court based on the Second Circuit's remand. On July 13, 2018, this Court issued an Order requesting supplemental briefing from each party as to the limited issue of the viability of Plaintiffs' state law claims. *See* DE 63. The supplemental briefing was subsequently filed by the parties. *See* DE 68, 70, 73, 74.

On September 21, 2018, Plaintiffs filed a letter motion for sanctions against the Fishbeins and their counsel, alleging that counsel for the Fishbeins failed to notify Plaintiffs of her substitution and failed to serve the Fishbeins' supplemental brief on the Plaintiffs. *See* DE 72.

**III.**     <u>STANDARD OF REVIEW</u>

It is established law in this Circuit that *pro se* filings like Plaintiffs' pleadings are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir. 1994)).

*Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)); *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant does not relieve her of her obligation to adhere to all applicable procedural rules."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted). Likewise, "mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standard of review on a Rule 12(b)(6) motion to dismiss remains applicable here: the Court must liberally construe the claims set forth in the Amended Complaint, accept all factual allegations in the Amended Complaint as true, and draw all

reasonable inferences in favor of the Plaintiffs. *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The Plaintiffs must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [Amended] [C]omplaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

## IV.  DISCUSSION

In its February 28, 2017 Report and Recommendation, this Court found that Plaintiffs had failed to state a federal cause of action and recommended, in light of Plaintiffs' failure to adequately plead diversity of citizenship, that the Amended Complaint be dismissed on these grounds. Judge Azrack adopted these findings and the Second Circuit subsequently affirmed Plaintiffs' failure to plead a federal cause of action. *See Maitland*, 712 Fed. App'x at 93. Accordingly, the Court limits its discussion in this Report and Recommendation to the grounds upon which the case was remanded by the Second Circuit, namely, to determine whether Plaintiffs' Amended Complaint pleads facts sufficient to state any claim arising under New York law.

As an initial matter, the Court must first determine what state law causes of action Plaintiffs are attempting to assert. Paragraph 8 of the Amended Complaint states that

> [t]his action also brought pursuant to violation of The New York State Consumer Protection Act, SEC Unregistered Mortgage Lender and the Common Law Causes of Action which include fraud, Intentional Misrepresentation, Fraudulent Omissions, Negligent Misrepresentation, Conflict of Interest, Constructive Fraud, Breach of Fiduciary Duty, Violation of Business and Professions Code, Civil Conspiracy, Breach of Contract, Lack of Capacity, Duress, Non-disclosure, Unjust Enrichment, Intentional infliction of emotional distress and unconscionability Slander of Title and a violation double-dipping.

Am. Compl. ¶ 8.  Plaintiffs also reference a claim for "constructive trust" in the Amended Complaint.  *Id.* ¶ 12(D).  Reading the Amended Complaint liberally, the Court construes Plaintiffs to be asserting state law claims for (1) violation of New York's Consumer Protection Act,  N.Y. GEN. BUS. LAW § 349; (2) common law fraud; (3) breach of fiduciary duty; (4) unjust enrichment; (5) constructive trust; (6) breach of contract; and (7) intentional infliction of emotional distress.

### A.    N.Y. GEN. BUS. LAW § 349

Section 349 of New York's General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."  N.Y. GEN. BUS. LAW § 349(a).  "Section 349 is subject to a three-year statute of limitations."  *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 788 (S.D.N.Y. 2017) (citing *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)).  "The New York Court of Appeals has clarified that the date of accrual 'runs from the time when the plaintiff was injured,' but the date of injury can vary depending on the circumstances.  In a case involving alleged omissions or misrepresentations, the injury occurs when the omission or misrepresentation was made.  In a case where statements or omissions created 'unrealistic expectations,' the injury occurs when those unrealistic

expectations 'were actually not met.'" *Nat'l Convention Servs., L.L.C*, 239 F. Supp. 3d at 788 (quoting *Corsello*, 967 N.E.2d at 1185) (internal citations omitted).

Using either of the above dates of accrual, any claim Plaintiffs are attempting to assert under Section 349 is untimely.  Plaintiffs' initial complaint was filed on October 9, 2015.  *See* DE 1.  To be timely, a cause of action under Section 349 would have had to accrue no earlier than October 9, 2012, three years prior.  Plaintiffs' initial mortgage refinancing took place in 2006, with Plaintiffs making several payments on the three mortgage-backed loans they had taken out.  *See* Am. Compl. ¶¶ 27-39, 47.  In 2007, the Fishbeins put a lien on Plaintiffs' property in Florida.  *Id*. ¶ 52.  Plaintiffs then received several communications in 2008 and 2009 informing them of the purported principal and interest on their mortgage loans.  *See id*. ¶¶ 57-63. Similarly, Plaintiffs received a letter on February 22, 2008 stating that a mortgage foreclosure proceeding would commence "immediately."  *Id*. ¶ 58.  On February 25, 2008, Washington Mutual Bank, under the name Lasalle Bank, N.A., filed a foreclosure action in New York State Supreme Court with respect to the Roosevelt, New York property.  *Id*. ¶ 61.  And Plaintiffs filed a complaint with the "Federal Independent Foreclosure Review" around April 30, 2012.  *Id*. ¶¶ 82-84.

Based on these allegations, Plaintiffs' injury – and the corresponding three-year limitations period – began to run either (1) in November 2006 when Plaintiffs' mortgage refinancing took place, or (2) at one of a number of points in time in the several years following 2006 when Plaintiffs were (i) initially making payments on their loans, (ii) receiving correspondence regarding the balance and interest on their loans and threatening legal action, and

(iii) actually facing a lien and a foreclosure proceeding.  It is therefore clear[4] to the Court that any claim Plaintiffs may have been able to bring under Section 349 accrued well before October 9, 2012, whether measuring from the date any alleged omission or misrepresentation was made (2006), or from the date any "unrealistic expectations" Plaintiffs may have had about their mortgages were not actually met (not long thereafter, and in no circumstances on or after October 9, 2012).

 Based on these conclusions, the Court respectfully recommends to Judge Azrack that any claim Plaintiffs have attempted to bring under Section 349 be dismissed, with prejudice.

**B.    Claims Sounding in Fraud:  Common Law Fraud, Breach of Fiduciary Duty, Unjust Enrichment, Constructive Trust**

Plaintiffs' Amended Complaint makes myriad references to fraud, constructive fraud, fraudulent omissions, and the like.   "Under New York law, the statute of limitations for common law fraud is six years from accrual or two years from actual or imputed discovery.  N.Y. C.P.L.R. § 213(8) (McKinney 2013).  The six-year period runs from 'the commission of the fraud.'"  *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 309-10 (S.D.N.Y. 2014) (quoting *Piedra v. Vanover,* 579 N.Y.S.2d 675, 677 (2d Dep't 1992)), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173 (2d Cir. 2016).  The same statute of limitations applies to other claims sounding in fraud, including constructive trust, in which case the limitations period "runs from the

---

[4]  The Court recognizes that "because the defendant[ ] bear[s] the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run."  *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) (citations omitted).  In light of the allegations in the Amended Complaint, the Court finds that this standard has been met, and the limitations period has run on all relevant state law claims, as explained in further detail, *infra*.

occurrence of the wrongful act or event which creates a duty of restitution." *Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 18 (2d Cir. 1983). Unjust enrichment is also subject to a six-year limitations period, in which case the cause of action "accrues upon the occurrence of the wrongful act giving rise to a duty of restitution." *Baiul v. NBC Sports*, No. 15-CV-9920, 2016 WL 1587250, at *10 (S.D.N.Y. Apr. 19, 2016) (quotation marks omitted), *aff'd sub nom. Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 Fed. App'x 710 (2d Cir. 2017). Similarly, Plaintiffs' claim for breach of fiduciary duty sounds in fraud, and, as such, it is subject to the same six-year limitations period. *See Dolmetta*, 712 F.2d at 19.

Here, any of Plaintiffs' claims sounding in fraud are barred by the applicable six-year limitations period. The analysis is similar to the analysis undertaken in connection with N.Y. GEN. BUS. Law § 349. Plaintiffs' claims for fraud arise from Plaintiffs' execution of "three Loans Notes" in connection with three mortgaged-backed loans in November 2006, as well as alleged representations and omissions made in connection with those transactions. Am. Compl. ¶ 40; *see id*. ¶¶ 27-79. Plaintiffs state that they made three to four payments on the loans until they were unable to make further payments. *Id*. ¶ 47. Plaintiffs also state that in June 2007, the Fishbeins placed a lien on Plaintiffs' property in Florida, *id*. ¶ 52, and on February 22, 2008, Plaintiffs received a letter informing them that an immediate mortgage foreclosure proceeding would be commencing. *Id*. ¶ 58. Thereafter, on February 25, 2008, Washington Mutual Bank, under the name Lasalle Bank, N.A., filed a foreclosure action in New York State Supreme Court with respect to the property in Roosevelt, New York. *Id*. ¶ 61. These allegations make clear that the six-year limitations period for Plaintiffs' fraud claims began to run in November 2006, when the alleged wrongful acts and omissions were made in connection with Plaintiffs' mortgage refinancing. The subsequent problems faced by Plaintiffs as outlined in their Amended

Complaint flow from the alleged acts and omissions which, as Plaintiffs aver, induced them to execute the "three Loan Notes" in 2006. Moreover, the alternative limitations period for fraud claims – two years from actual or imputed discovery, *see* N.Y. C.P.L.R. § 213(8) – had clearly run by the time this action was commenced: the chronology of the Amended Complaint makes clear that Plaintiffs' were aware of any alleged fraud perpetrated against them prior to October 9, 2013, two years prior to the filing of the initial complaint in this action.

Because Plaintiffs' claims sounding in fraud are untimely, the Court respectfully recommends to Judge Azrack that these claims be dismissed, with prejudice.

### C.    Potential Additional Claims

As outlined above, Plaintiffs' Amended Complaint makes reference to "Breach of Contract" and "Intentional infliction of emotional distress." Am. Compl. ¶ 8. To the extent Plaintiffs are attempting to assert these claims, they too are untimely. "New York law provides for a six-year statute of limitations for causes of action upon a contractual obligation or liability. N.Y. C.P.L.R. § 213(2). When a plaintiff seeks to recover for breach of a contract's representations and warranties, that action can only be brought within six years of the date of the contract execution." *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 117 (S.D.N.Y. 2016) (citing *ACE Sec. Corp. v. DB Structured Prods., Inc*., 25 N.Y.3d 581, 596 (2015)). Any breach of contract claims Plaintiffs may potentially be asserting would necessarily be connected to the 2006 transactions, and, as such, are untimely under the six-year limitations period. Moreover, "[i]t is well established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations." *Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F. Supp. 450, 455 (S.D.N.Y. 1997). Accordingly, any claim for intentional infliction of emotional distress is also untimely under the facts as alleged in the

Amended Complaint.  The Court respectfully recommends to Judge Azrack that any claims for breach of contract and intentional inflection of emotional distress which Plaintiffs are attempting to raise be dismissed, with prejudice.

### D. Issues of Tolling

The Court must also address an argument raised by Plaintiffs in their supplemental filings.  In response to the Defendants' arguments that Plaintiffs' claims "are time-barred under the law since the transactions occurred in [ ] 2006," "Plaintiffs respond by claiming continuing violation which tolls the limitations period from running until the last offense is committed," and, accordingly, "time has not yet begun to accrue because Defendants' continued wrongful act."  DE 74 at 6.  Plaintiffs' arguments require the Court to examine two related, but ultimately distinct, legal doctrines:  the "continuing violations doctrine" and the doctrine of equitable tolling, both of which Plaintiffs appear to attempt to invoke at different points in their supplemental filings.

Under the continuing violations doctrine, a claim challenging a continuous practice and policy of discrimination may not accrue until the last discriminatory act in furtherance of the policy.  *Kwas v. Intergraph Gov't Sols.*, No. 15-CV-5897, 2016 WL 4502039, at *2 (E.D.N.Y. Aug. 24, 2016) (citing *Fahs Construction Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013)). "The continuing violation doctrine is applicable in limited contexts, including Title VII discrimination and retaliation claims, Eighth Amendment claims of medical indifference brought under Section 1983, and Eighth Amendment claims for cruel and unusual punishment against federal officials brought under *Bivens*."  *Kwas*, 2016 WL 4502039, at *2 (citing *MacFarlane v. Ewald,* No. 10-CV-2877, 2016 WL 4076585, at *3 (E.D.N.Y. Aug. 1, 2016) (collecting cases)).

In the instant action, because the only remaining claims asserted by Plaintiffs are "private civil torts, the continuing violation doctrine is inapplicable." *Kwas*, 2016 WL 4502039, at *2.

A separate but related legal doctrine is that of equitable tolling. "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (3d Dep't 2005)). "Due diligence on the part of the plaintiff in bringing [an] action," however, is an essential element of equitable relief. *Holy See,* 17 A.D.3d at 796. "If a plaintiff cannot 'articulate[ ] any acts by defendants that prevented [him] from timely commencing suit' then he has 'failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit.'" *Abbas*, 480 F.3d at 642 (quoting *Holy See,* 17 A.D.3d at 796). Here, Plaintiffs have not pointed to anything which prevented them from timely filing suit. Rather, they argue that "defendants should be equitably estopped from raising a statute of limitations defense since plaintiffs have been kept in ignorance of vital information necessary to pursue their claims without any fault or lack of due diligence." DE 74 at 6. However, Plaintiffs' own allegations belie such an argument: Plaintiffs admit to signing the mortgage documents, *see* Am. Compl. ¶¶ 30, 32, as well as to receiving copies of the documents in the mail about a month later. *Id*. ¶ 39. Although Plaintiffs state that they "later found out that [they] had unknowingly signed three Loans Notes," *id*. ¶ 40, there is no indication that any action of the Defendants prevented Plaintiffs from learning the details of these transactions and their corresponding financial obligations. Indeed, in making "3 or 4 monthly payments" on the loans, Plaintiffs appear to have been aware of their obligations. *Id*. ¶ 47.

For the foregoing reasons, the Court finds that both the continuing violations doctrine and the doctrine of equitable tolling will are not applicable to Plaintiffs' circumstances.

### E.       Plaintiffs' Motion for Sanctions

On September 21, 2018, Plaintiffs' filed a letter motion directed to this Court for sanctions against the Fishbeins and their counsel.  *See* DE 72.  Plaintiffs' motion seeks monetary sanctions against the Fishbeins and their attorney "in the sum of $50,000.00 each," because (1) the Fishbeins "failed to notified Plaintiffs . . . that they had retain a new attorney," and (2) the Fishbeins' "new attorney did not send Plaintiff a copy [of] Defendant Fishbein Motion to Dismiss Brief."  *Id.*  Plaintiffs go on to state that "[o]n Sept 7, 2018 Plaintiff called the Court Pro Se Office only to discovered that Defendant 'the Fishbein' and their attorney had filed Defendant Motion to Dismiss Brief with the Court on or about August 30th 2018."  *Id.*

The Fishbeins have responded to the motion, through counsel, stating as follows:

> This firm was retained on August 30, 2018, to represents [*sic*] Defendants, Robert Fishbein and Lisa Fishbein . . . . On August 30, 2018 our office filed a notice of Consent to Change Attorneys for Defendants Fishbeins. . . . . Our office filed the supplemental brief on August 30, 2018.  Even if our office failed to serve a copy on Plaintiffs by regular mail, as Plaintiffs point out in their letter filed on September 21, 2018, on September 7, 2018 they became aware of our filing, notwithstanding any failure to serve them with a copy. Additionally, Plaintiffs never called our office.  Furthermore, Plaintiff's opposition/response brief was due on or before October 5, 2018, and Plaintiffs filed their brief well in advance of their due date.  Since Plaintiffs became aware of our supplemental brief on September 7, 2018, Plaintiff had enough time to prepare their brief.

DE 76.

Whatever the cause of any failure on the part of counsel for the Fishbeins to serve their supplemental brief on the Plaintiffs, the Court does not find that the situation warrants sanctions, let alone monetary sanctions in the amount of $50,000.00 (or $100,000.00, collectively).

Significantly, Plaintiffs filed their opposition/response supplemental filings[5] on September 21, 2018, the same day as their sanctions motion, notwithstanding the fact that the Court had given them until October 5, 2018 for such filing.  *See* DE 63.  Plaintiffs did not seek Court intervention in obtaining the Fishbeins' supplemental filing, as was their right to do, nor did they seek an extension of time for filing their supplemental papers in light of allegedly not having received the Fishbeins' filing.  More fundamentally, however, the Court finds that Plaintiffs were not prejudiced by any failure on the part of counsel for the Fishbeins:  Plaintiffs' claims are unsustainable, for the reasons discussed above, and in the Court's view, Plaintiffs' alleged inability to thoroughly respond to the Fishbeins' supplemental brief does nothing to change that fact.

Accordingly, this Court respectfully recommends to Judge Azrack that Plaintiffs' motion for sanctions against the Fishbeins and their counsel be DENIED.

**V.    CONCLUSION**

For the foregoing reasons, the Court respectfully recommends to Judge Azrack that the motions to dismiss brought by the Defendants be GRANTED as to Plaintiffs' state law claims, and that the Amended Complaint be DISMISSED, with prejudice.  The Court further recommends that Plaintiffs' motion for sanctions be DENIED.

---

[5]   The Court notes that Plaintiffs filed two opposition/response briefs, one in response to each Defendant's supplemental filing, *see* DE 73, 74, notwithstanding the fact that the Court only authorized each party to file a single supplemental brief.  *See* DE 63 ("[T]he Court is giving each party the opportunity, to the extent it chooses to do so, to file a *single* supplemental brief limited to addressing the viability of Plaintiffs' state law claims. The briefs are limited to 10 pages. Defendants' supplemental brief(s), if any, shall be filed on or before August 30, 2018, and Plaintiffs' opposition/response *brief* shall be filed on or before October 5, 2018. No further filings will be accepted.") (emphasis added).

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  ***Pro se* litigants shall mail a copy of any objections to the Clerk of the Court or they may deliver a copy to the Pro Se Office.  A courtesy copy of any objections filed is to be sent to the Chambers of Judge Joan M. Azrack.  Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for Defendant Chase is directed to serve a copy of this Report and Recommendation on the *pro se* Plaintiffs forthwith by overnight mail and first-class mail and to file proof of such service on ECF by March 11, 2019.**

Dated: Central Islip, New York
      March 7, 2019

SO ORDERED.

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge